UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

LUIS HERNANDEZ,

        Plaintiff,

    -v-                                  No. 16-CV-6139-LTS

UNITED STATES OF AMERICA, W.
OUTLAW, United States Department of
Homeland Security Immigration Officer, #0862,
JOHN DOES, CITY OF NEW YORK,

        Defendants.

-------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

        Plaintiff Luis Hernandez ("Plaintiff" or "Hernandez") brings this civil rights action, pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346 (the "FTCA"), the Fourth and Fifth Amendments of the United States Constitution, and 42 U.S.C. § 1983 ("Section 1983"), against Defendants United States of America (the "United States"), W. Outlaw, United States Department of Homeland Security Immigration Officer, #0862 ("Outlaw"), John Does (the "Federal Individual Defendants," and together with the United States, collectively, the "Federal Defendants"), and the City of New York (the "City") (all together, the "Defendants"). In a six-count Second Amended Complaint (the "SAC"), Plaintiff, a citizen and resident of the United States, alleges that he suffered violations of his rights under federal and state laws when he was held in the custody of the City for four days, allegedly due to an immigration detainer that was wrongfully lodged against him by a Federal Defendant. (Docket Entry No. 35.) Plaintiff seeks damages and other relief.

The Federal Defendants and the City Defendant now each move, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), to dismiss all of Plaintiff's claims against them. (Docket Entry Nos. 42 and 45.) Plaintiff opposes the Defendants' motions and also seeks leave to amend the SAC.

The Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

The Court has considered the parties' submissions carefully. For the following reasons, the Federal Defendants' motion is granted, the City Defendant's motion is granted, and Plaintiff's request for leave to file a further amended complaint is denied.

<u>Background</u>

Except as otherwise indicated, the following facts are alleged in the SAC or drawn from documents annexed thereto. Plaintiff was born in Brooklyn, New York, and is a citizen and resident of the United States. (SAC, Docket Entry No. 35, ¶¶ 7, 13.) Defendant Outlaw and the John Doe defendants (the "Homeland Security Officers") were officers of DHS, or other agencies of the United States, who were involved in the decision to issue the "Immigration Detainer – Notice of Action" that is the subject of this case, or otherwise to detain Plaintiff. (<u>Id.</u> ¶ 9.) They were at all times relevant to this action DHS employees and acted "within the scope and course of their employment" as "investigative or law enforcement officers." (<u>Id.</u> ¶¶ 10-11.) Defendant City is a municipal entity created and authorized under the laws of the State of New York," and maintains its own Department of Corrections ("DOC"). (<u>Id.</u> ¶ 12.) The City "has a policy, custom and practice of acceding to federal immigration detention requests with regard to large numbers of the inmates in its custody at any given time" that have

been lodged against inmates in the DOC's custody, based on a series of Local Laws passed by the New York City Council in 2011, 2013, and 2014.[1] (See id. ¶¶ 36-39.)

On or about September 27, 2013, Plaintiff was arrested by the New York Police Department ("NYPD") in Manhattan and charged with public lewdness, a misdemeanor.[2] (Id. ¶ 14.) Also on that day, a DHS "Immigration Detainer – Notice of Action" (the "9/27/13 Detainer") was "wrongfully lodged against" Plaintiff by Defendant Outlaw. (Id. ¶¶ 15-16.) According to Plaintiff, Outlaw "did not care . . . whether or not the wrong person was detained pursuant to the detainer that he lodged on" September 27, 2013.[3] (Id. ¶ 51.) The 9/27/13 Detainer "falsely stat[ed] that Plaintiff was of Honduran nationality, that Plaintiff's middle name was Enrique, and that Plaintiff's last name was 'Hernandez-Martinez.'" (Id. ¶ 15.) Plaintiff alleges that he was never provided with a copy of the 9/27/13 Detainer, despite a legend on the printed form directing "the recipient law enforcement agency to 'provide a copy to the subject of [the] detainer.'" (Id. ¶ 46.) Neither Outlaw, any DHS employee, nor any other United States government employee "made any inquiries – including but not limited to checking [the United States'] own or . . . DOC's readily available records which stated clearly that Plaintiff had been born in New York" to facilitate "ascertain[ing] whether in fact the [9/27/13] [D]etainer should

---

[1]    As Defendants point out in their motion papers, the Local Laws in effect at the relevant time did not require the detention of persons on whom ICE detainers had been lodged. (See Mem. of Law in Support of Def. City's Motion to Dismiss ("City Opening Br."), Docket Entry No. 44, at 12-14; Declaration in Support of re Motion to Dismiss ("Myrvold Decl."), Exhibits B and C, Docket Entry Nos. 43-2, 43-3.)

[2]    The charge has since been dismissed. (Id. ¶ 52.)

[3]    The SAC alleges that the detainer was lodged on December 27, 2016. (Id. ¶ 51.) As that pleading was filed on December 14, 2016, and addresses events that took place in September and October 2013, the Court construes Plaintiff's allegation as a typographic error and assumes that the intended reference was to "September 27, 2013."

have been issued with regard to Plaintiff, and/or . . . whether in fact Plaintiff was a United States [c]itizen." (Id. ¶ 49.) Plaintiff alleges Defendant Outlaw lodged the 9/27/13 Detainer "to keep Plaintiff in custody because of the mere possibility that he was the Luis Enrique Hernandez-Martinez of Honduran nationality whose detention was desired." (Id. ¶ 50.)

At Hernandez' September 27, 2013, arraignment on the public lewdness charge, the prosecutor recommended a sentence of three days' community service upon a plea. (Id. ¶ 21.) The judge responded: "You can't ask for community service. He has an ICE detainer." (Id.) The prosecutor and the defense attorney thereupon requested that bail be set at $1. (Id.) The SAC asserts that the nominal bail was set "[b]ecause of the detainer" and "allowed Plaintiff time credit towards any eventual sentence he might have received." (Id. ¶ 18.) The detainer, according to Plaintiff, triggered Plaintiff's ineligibility for the community service plea bargain at the arraignment. (Id. ¶ 20.) Plaintiff further alleges that, absent the detainer, he would have been released on his own recognizance at the arraignment. (Id. ¶¶ 17, 34.)

Plaintiff further alleges that, "solely" because of the issuance of the 9/27/13 Detainer, he was "wrongfully held in the custody of the" DOC from September 27, 2013 until his release on October 1, 2013. (Id. ¶ 22.) While in custody of the DOC, Plaintiff allegedly "told various staff members . . . that he was a United States [c]itizen." (Id. ¶ 35.) Plaintiff alleges that his New York "nativity" was indicated in sources available to the NYPD and the DOC: the DOC's "Inmate Lookup Service," the DOC website, and "on an arrestee's 'rap sheet.'" (Id. ¶¶ 43-45.) Plaintiff alleges that, despite this "readily available" information, the DOC's staff "did not make any inquiries . . . to seek to ascertain whether in fact the detainer was issued in error with regard to Plaintiff, and/or to seek to ascertain whether in fact Plaintiff was a United States [c]itizen." (Id. ¶ 48.)

On October 1, 2013, Outlaw sent a further "Immigration Detainer – Notice of Action" (the "10/1/13 Detainer"), instructing the DOC to cancel the previously issued 9/27/13 Detainer. (Id. ¶ 23.) Plaintiff alleges that he was never provided with a copy of the 10/1/13 Detainer, and that the "DOC routinely does not provide copies of immigration detainers to the individuals who [they are] lodged against," despite the instruction on the form directing law enforcement agencies to do so. (Id. ¶ 47.) Plaintiff alleges that, also on October 1, 2013, an unknown individual paid the $1.00 bail on Plaintiff's behalf and he was discharged from custody. (Id. ¶¶ 27-29.) According to Plaintiff, per the City's "policies, customs, and practices," when bail is set at the nominal amount of $1.00 "and there is no longer a detainer requiring that an inmate be held in custody," the City "must notify appropriate [DOC] personnel and staff, including but not limited to [DOC] 'reverends,' who thereafter must make a 'donation' of said bail amount on said inmate's behalf." (Id. ¶ 30.) When bail is paid in this fashion, Plaintiff alleges, it is the practice of the City to "accept[] and process[] that $1.00 bail payment and immediately release[] the inmate," and such release "is automatic in circumstances – such as Plaintiff's – where there are no longer any detainers in place that had been holding an inmate in custody." (Id. ¶¶ 31-32.)

On September 10, 2015, Plaintiff submitted an Administrative Tort Claim to the DHS, and he was informed on or about February 26, 2016, that the claim was denied. (Id. ¶ 4.) Plaintiff initiated this action on August 3, 2016, alleging that he suffered harm due to the events of September 27, 2013, through October 1, 2013. (Docket Entry No. 1.) In Counts I through IV of the SAC, Plaintiff asserts claims against the United States pursuant to the Federal Tort Claims Act for false arrest and imprisonment, abuse of process, violation of due process rights, and negligence; Count V asserts claims against Outlaw and the Doe defendants for violations of the

Fourth and Fifth Amendments to the Constitution of the United States; and, in Count VI, Plaintiff asserts constitutional claims against the City of New York pursuant to 42 U.S.C. § 1983 ("Section 1983") and <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 660 (1978).

<u>DISCUSSION</u>

The Federal Defendants move, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), to dismiss Plaintiff's claims against them for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. The City moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Count VI of the SAC for failure to state a claim upon which relief can be granted.

<u>Rule 12(b)(1) Aspect of the Federal Defendants' Motion: Standing</u>

In resolving a Rule 12(b)(1) motion to dismiss an action for lack of standing, the Court adopts the "Rule 12(b)(6) standard, construing the complaint in plaintiff's favor and accepting as true all material factual allegations contained therein." <u>Donoghue v. Bulldog Inv. Gen. P'ship</u>, 696 F.3d 170, 173 (2d Cir. 2010). When it comes to standing, "in essence the question . . . is whether the litigant is entitled to have the court decide the merits of the dispute" by invoking its jurisdiction. <u>Crist v. Commission on Presidential Debates</u>, 262 F.3d 193, 194 (2d Cir. 2001) (citation omitted). To demonstrate constitutional standing, a plaintiff must have (1) suffered an injury in fact that is concrete and particularized, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. <u>Spokeo, Inc. v. Robins</u>, 136 S. Ct. 1540, 1547-48 (2016). The plaintiff, as "[t]he party

invoking federal jurisdiction[,] bears the burden of establishing these elements." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

The Federal Defendants assert that Plaintiff's claims against them should be dismissed for lack of subject matter jurisdiction because he has not suffered any injury in fact that was caused by the Federal Defendants and he thus lacks standing to assert his claims against them. (The Federal Defendants' Memorandum of Law in Support of Their Motion to Dismiss ("Federal Defs. Opening Br."), Docket Entry No. 47, at 8-12.) According to the Federal Defendants, Plaintiff has not alleged facts demonstrating plausibly that his detention was pursuant to the 9/27/13 Detainer, but, rather, Plaintiff's allegations indicate that his detention was due to his failure to tender bail that was lawfully imposed in connection with his state criminal charge. They characterize Plaintiff's argument that he would not have been released had he paid the bail as speculative and insufficient to establish Article III standing.

The Court finds that Plaintiff has alleged facts sufficient to demonstrate his standing. Regardless of whether Plaintiff would have been detained had he tendered the $1.00 bail imposed by the state court, Plaintiff has alleged that, due to the "wrongfully issued [9/27/13] [D]etainer," he "was unable to be released from custody at his arraignment," though he "would have otherwise been released on his own recognizance" and, critically, that he would have been eligible for a plea bargain at his arraignment that would have resolved the criminal charge with three days of community service rather than detention. (See SAC ¶¶ 17, 19-20, 34.) Denial of the ability to be released on one's own recognizance, instead of being detained, and of the opportunity to enter into a plea bargain that entails three days of community service, rather than five days of jail, constitute concrete and particularized injuries. Plaintiff's allegations that the existence of the detainer triggered the rejection of the community service recommendation and

resulted in the imposition of bail conditions, satisfaction of which during the pendency of the detainer would have had adverse consequences for him, address sufficiently the causal connection prong of the <u>Lujan</u> standard.

<u>Rules 12(b)(6) Aspect of the Federal and City Defendants' Motions</u>

In determining whether a plaintiff has set forth the "short and plain statement of the claim showing that [he is] entitled to relief" required by the Federal Rules (<u>see</u> Fed. R. Civ. P. 8(a)(2)), the Court looks to whether the allegations in the complaint establish the "facial plausibility" of the plaintiff's claims. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 677-78 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 556 (2007)). Such a showing "must be enough to raise a right to relief above the speculative level," requiring "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." <u>Twombly</u>, 550 U.S. at 555 (internal quotation marks omitted). In deciding a Rule 12(b)(6) motion to dismiss, the Court assumes the truth of the facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff. <u>See</u> <u>Harris v. Mills</u>, 572 F.3d 66, 71 (2d Cir. 2009).

"In adjudicating a motion to dismiss, a court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies." <u>Geron v. Seyfarth Shaw LLP (In re Thelen LLP)</u>, 736 F.3d 213, 219 (2d Cir. 2013) (citing <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 152-53 (2d Cir. 2002)).

<u>Counts I Through IV: Federal Tort Claims Act Claims</u>

Plaintiff asserts that the United States is liable under the FTCA, 28 U.S.C. §§ 2671-80, for false arrest and imprisonment (Count I), abuse of process (Count II), violation of Plaintiff's right to due process under New York's state Constitution (Count III), and negligence (Count IV).  (SAC ¶¶ 53-73.)  The United States argues that the Complaint fails to state a claim under the FTCA for each alleged tort.  (Federal Defs. Opening Br., at 13-19.)

"The FTCA was designed primarily to remove the sovereign immunity of the United States from suits in tort," and "gives federal district courts exclusive jurisdiction over claims against the United States for 'injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission' of a federal employee 'acting within the scope of his office or employment.'"  <u>Millbrook v. United States</u>, 569 U.S. 50, 52 (2013) (quoting 28 U.S.C. § 1346(b)(1)) (internal quotation marks and citation omitted).  The FTCA's "broad waiver of sovereign immunity is subject to a number of exceptions," including the "intentional tort exception," which "preserves the Government's immunity from suit for 'any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights.'"  <u>Millbrook</u>, 569 U.S. at 52 (quoting 28 U.S.C. § 2680(h)) (original brackets omitted).  The FTCA, which "waiv[es] sovereign immunity 'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred,' . . . directs courts to consult state law to determine whether the government is liable for the torts of its employees."  <u>Liranzo v. United States</u>, 690 F.3d 78, 86 (2d Cir. 2012) (quoting 28 U.S.C. § 1346(b)(1)).  "Under the FTCA's private analogue requirement[,] . . . a plaintiff's cause of action must be comparable to a cause of action against a private citizen recognized in

the jurisdiction where the tort occurred." <u>Watson v. United States</u>, 865 F.3d 123, 134 (2d Cir. 2017) (citations and internal quotation marks omitted).

*Count I: False Arrest and Imprisonment*

Plaintiff alleges that the Homeland Security Officers, acting in the capacity of investigative or law enforcement officers, issued the 9/27/13 Detainer without probable cause and failed to take appropriate steps to have Plaintiff released from custody, and that the acts of those federal employees "were the direct and proximate cause of injury and damage to Plaintiff." (<u>See</u> SAC ¶¶ 53-57.) The United States asserts that this claim "should be dismissed for failure to show an injury-in-fact or causation," and "because the [SAC] fails to adequately allege that [Plaintiff's] confinement was without proper legal authority or not justified by law." (Federal Defs. Opening Br., at 13-14.)[4]

"Under New York law, the elements of a false imprisonment claim are: '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" <u>Singer v. Fulton Cty. Sheriff</u>, 63 F.3d 110, 118 (2d Cir. 1995) (quoting <u>Broughton</u>

---

[4]     Although "false imprisonment" generally falls within the FTCA's "intentional tort exception," the FTCA waives the United States' sovereign immunity from "false imprisonment claims arising from the 'acts or omissions of investigative or law enforcement officers of the United States Government,' which are defined as 'any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.'" <u>McGowan v. United States</u>, 825 F.3d 118, 127, n.5 (2d Cir. 2016) (quoting 28 U.S.C. § 2680(h)). The Court assumes for purposes of this motion practice, and the Federal Defendants do not contest, that the individual Federal Defendants were acting as investigative or law enforcement officers at all relevant times.

v. State of N.Y., 37 N.Y.2d 451, 373, cert. denied, 423 U.S. 929 (1975)) (internal brackets omitted).

Plaintiff fails to allege sufficient facts to support an inference that the Federal Individual Defendants confined him, or that the confinement was not otherwise privileged, and, consequently, he has not pled the elements of a false arrest and imprisonment claim. Plaintiff only specifically alleges that the 9/27/13 Detainer "was issued by Defendant Outlaw," and further alleges that Plaintiff was confined by the DOC after a lawful arrest by the NYPD, imposition of bail by a state court judge, and failure by Plaintiff to pay that bail. (See SAC ¶¶ 11, 14, 18-22, and 54-55.) Plaintiff fails to allege facts demonstrating the Homeland Security Officers' responsibility for his detention and that "actions and omissions" of those officers caused Plaintiff's allegedly wrongful detention; the SAC proffers only conclusory assertions. See McGowan, 825 F.3d at 127, n.5; Singer, 63 F.3d at 118. Indeed, Plaintiff's allegations do not support the inference that Plaintiff was confined due to "the intention of" the Federal Defendants to confine him. Rather, the only plausible inference to be drawn from Plaintiff's factual pleading is that he was confined after being arrested by the NYPD, following the lawful imposition of bail and his failure to tender the bail. Thus, there is no showing here that Plaintiff's confinement, even if it was attributable to the Federal Defendants in some indirect way because of the issuance of the 9/27/13 Detainer, was not otherwise privileged. See Singer, 63 F.3d at 118. Plaintiff's contention that he would have been kept confined even had he paid the bail is likewise conclusory and speculative.

Plaintiff must plead "more than labels and conclusions" to state a claim for false arrest and imprisonment under the FTCA. See Twombly, 550 U.S. at 555; Millbrook, 569 U.S. at 52; 28 U.S.C. § 2680(h). Plaintiff has failed to do so here.

Because Plaintiff has failed to state a false arrest and imprisonment claim under the FTCA upon which relief can be granted, the United States' motion is granted as to Count I.

*Count II: Abuse of Process*

Plaintiff alleges that "[t]he Homeland Security Officers employed regularly issued process against Plaintiff[,] compelling the performance or forbearance of prescribed acts" and that "[t]he purpose of activating the process was intent to harm [P]laintiff without economic or social excuse or justification, and the [D]efendants were seeking a collateral advantage or corresponding detriment to Plaintiff which was outside the legitimate ends of process."  (SAC ¶¶ 58-62.)  The United States asserts that this claim should be dismissed for "failure to show an injury-in-fact or causation," and that, because Plaintiff has only made conclusory assertions of the basic elements of the claim, he fails to state an abuse of process claim upon which relief can be granted.  (Federal Defs. Opening Br., at 13-16.)

"In New York, a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse [or] justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process."  Savino v. City of New York, 331 F.3d 63, 76 (2d Cir. 2003) (internal quotation marks and citation omitted).  "[T]o state a claim for abuse of process, a plaintiff must establish that the defendants had an improper purpose in instigating the action," and there is a distinction between "improper motive" and "improper purpose"—an "improper motive" is insufficient to establish an "abuse of process" claim.  Id. at 77 (citing Dean v. Kochendorfer, 237 N.Y. 384, 143 N.E. 229 (1924)) (emphasis omitted).

Plaintiff asserts that he has sufficiently pled that the Federal Defendants had an improper "collateral objective" for purposes of an "abuse of process" claim, as the Federal

Defendants allegedly "cast a net so wide that a detainer would be lodged against anyone who had any overlapping pedigree information as the individual for whom an order of removal had been obtained (or who is sought via a detainer for other reasons), without doing even a rudimentary investigation to see if the person against whom the detainer is lodged is indeed the person actually sought." (Memorandum of Law in Opposition to Defendants' Motions to Dismiss ("Opp. Br."), Docket Entry No. 51, at 25 n.31.) Plaintiff, however, fails to plead facts sufficient to support an inference that the Federal Defendants "had an improper purpose" in "casting [their] net so wide." There are no facts proffered in the SAC that would support a reasonable inference that the Federal Defendants, in issuing the 9/27/13 Detainer, were particularly hostile to or harbored animus towards the Plaintiff specifically and were motivated by an improper purpose to "do harm" to him or anyone else. See Savino, 331 F.3d at 76-77. Plaintiff thus fails to plead plausibly that the Homeland Security Officers acted with the requisite "intent to do harm without excuse or justification." Plaintiff makes only conclusory allegations of improper intent and purpose, rendering the pleading no more than "a formulaic recitation of the elements of" an abuse-of-process claim. See Twombly, 550 U.S. at 555; Savino, 331 F.3d at 76. Moreover, as Plaintiff himself acknowledges, local law enforcement agencies are "not required under law . . . to accede to federal immigration detention requests." (See SAC ¶ 40). In light of the non-mandatory nature of the 9/27/13 Detainer, Plaintiff's detention could not have been "compelled" by the Federal Defendants.

Plaintiff has not pled an abuse-of-process claim under the FTCA upon which relief can be granted. The United States' motion to dismiss Count II is therefore granted.

*Count III: Violation of Right to Due Process*

Plaintiff asserts that the United States is liable under the FTCA for the violation of "Plaintiff's right to Due Process as protected under Article I, § 6 of the New York State Constitution" by the Homeland Security Officers acting under color of law, and that "[a] damages remedy . . . is necessary to effectuate the purposes of" and "ensure [the] full realization of Plaintiff's rights under" that state constitutional provision. (SAC ¶¶ 63-68.) Article I, § 6 of the New York State Constitution provides that "[n]o person shall be deprived of life, liberty or property without due process of law." The United States asserts that this claim "should be dismissed for "failure to show an injury-in-fact or causation," and that the "claim fails as a matter of law" because "'the United States has not waived sovereign immunity with respect to constitutional tort claims against the United States…'" in the context of federal constitutional claims and "[c]ourts have extended these holdings to claims asserted under the New York State [C]onstitution." (Federal Defs. Opening Br., at 14, 16-18 (quoting Holloway v. United States, No. 05-CV-5908-ARR, 2006 WL 516826, at *2 (E.D.N.Y. Feb. 28, 2006) (internal brackets omitted).)

In addition, because the FTCA generally waives sovereign immunity only as to claims that could have been brought against private individuals, Plaintiff's due process-based claim under the New York State Constitution would not be viable unless it could be asserted against a private individual based on purely private conduct. New York's constitutional due process provision does not authorize such a claim. Sharrock v. Dell Buick-Cadillac, Inc., 45 N.Y.2d 152, 160-161 (1978), on which Plaintiff relies, is not to the contrary. In Sharrock, the New York Court of Appeals found that the lien enforcement activities of a private entity were "entwined" with government action "so as to constitute significant and meaningful State

participation <u>which triggers the protections afforded by [the New York State] Constitution</u>."  45

N.Y.2d at 161 (emphasis added).  <u>Sharrock</u> thus teaches that state action is the operative factor in

establishing a claim under the constitutional due process provision.  The Court of Appeals

confirmed the requirement of a demonstration of state action in connection with claims of

violations of New York state constitutional rights in <u>SHAD All. v. Smith Haven Mall</u>, 66 N.Y.2d

496, 505–06 (1985), which addressed the question of whether New York's free speech guarantee

limited a private landlord's ability to restrict handbilling activities on private property.  <u>See</u> 66

N.Y.2d at 505 ("If there be no State action, our inquiries must end . . . ." (citation omitted)).

 In a recent report and recommendation that was adopted by the United States

District Court for the Eastern District of New York, the court analyzed a claim asserted under

identical due process language from the Georgia state constitution and concluded "that a claim

for a due process violation is not cognizable under the FTCA," as a plaintiff cannot bring an

analogous claim under state law for "violation of due process" against a private citizen.  <u>See</u>

<u>Appolon v. United States</u>, No. 16-CV-2275-SJ-SMG, 2017 WL 3994925, at *15 (E.D.N.Y. Sept.

6, 2017), <u>report and recommendation adopted by</u> No. 16-CV-2275-SJ-SMG, 2018 WL 461241

(E.D.N.Y. Jan. 18, 2018), <u>appeal pending</u>.  The Court finds the reasoning of the <u>Appolon</u> report

and recommendation persuasive.

 Plaintiff cannot bring a New York state constitutional violation of due process

claim under the FTCA against the United States, as a matter of law.  Accordingly, the United

States' motion to dismiss Count III is granted.

*Count IV: Negligence*

 Plaintiff asserts that the United States is liable for negligence under the FTCA, as

the "Homeland Security Officers owed a duty to Plaintiff [and] breached their duty to Plaintiff,"

which was "a direct and proximate cause and a substantial factor in bringing about Plaintiff's damages." (SAC ¶¶ 69-73.) The United States asserts that this claim "should be dismissed for "failure to show an injury-in-fact or causation," and that the claim "should also be dismissed for failure to state a claim," as the SAC "contains no more than a threadbare recital of the elements of a general negligence claim." (Federal Defs. Opening Br., at 14, 18-19.)

"Under New York law, a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution," Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994), nor does an administrative agency's violation of its own rule constitute "negligence per se," see McGowan, 825 F.3d at 128. Those principles, as applied here, lead the Court to conclude that Plaintiff may not recover under general negligence principles on his claim that federal immigration officers failed to exercise the appropriate degree of care in issuing an immigration detainer.

Furthermore, Plaintiff's negligence claim fails because it does not meet the FTCA's "private analogue" requirement, as Plaintiff has not alleged plausibly that any duty owed to Plaintiff or a breach of said duty was "comparable to a cause of action against a private citizen recognized in the jurisdiction where the [negligence] occurred." See Watson, 865 F.3d at 134. Plaintiff has not demonstrated that the Homeland Security Officers' actions that caused the issuance of the 9/27/13 Detainer, as alleged, have an analogue in a recognized New York cause of action sounding in tort. Finally, Plaintiff does not plead with "facial plausibility" precisely what duty the Homeland Security Officers owed to Plaintiff, nor how they breached that duty, and thus fails to state a basic element of a negligence claim upon which relief can be granted. See Iqbal, 556 U.S. at 678-79.

The United States' motion to dismiss Count IV is therefore granted.

*Count V: Constitutional (<u>Bivens</u>) Claims*

Plaintiff asserts that the Federal Individual Defendants are liable for violations of Plaintiff's rights under the Fourth and Fifth Amendments of the United States Constitution, specifically his right "to be free from unlawful seizures" and his right not to be deprived "of liberty without due process of law."  (SAC ¶¶ 74-76.)  The United States asserts that this claim should be dismissed for "failure to show an injury-in-fact or causation," and that the claim should also be dismissed for failure to state a claim, because it is "premised on the same factual allegations of false arrest and false imprisonment," and Plaintiff has not pled sufficient facts to establish a false arrest and imprisonment claim.  (Federal Defs. Opening Br., at 14, 19-21 (citing <u>Farag v. United States</u>, 587 F. Supp. 2d 426, 450 n.22 (E.D.N.Y. 2008).)

In <u>Bivens v. Six Unknown Named Agents</u>, 403 U.S. 388 (1971), the Supreme Court first "recognized an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights."  <u>McGowan</u>, 825 F.3d at 123 (internal quotation marks and citation omitted).  In <u>Bivens</u>, a plaintiff who had been subjected to an illegal search and seizure in violation of the Fourth Amendment sought damages against federal law enforcement officers who had handcuffed him in his own home without a warrant.  <u>See</u> <u>Gonzalez v. Hasty</u>, No. 12-CV-5013-BMC-SMG, 2017 WL 4158491, at *10 (E.D.N.Y. Sept. 18, 2017), <u>appeal pending</u>.  The Supreme Court has only recognized <u>Bivens</u> claims twice since then, in "particular circumstances: (1) under the Fifth Amendment's due process clause for gender discrimination against a Congressman for firing his female secretary, . . . and (2) under the Eighth Amendment's prohibition on cruel and unusual punishment against prison officials for

failure to treat an inmate's asthma which led to his death." Id. (citing Davis v. Passman, 442 U.S. 228 (1979) and Carlson v. Green, 446 U.S. 14 (1980)). The Supreme Court has recently observed that, "[g]iven the notable change in the Court's approach to recognizing implied causes of action" in other contexts since Bivens, Davis, and Carlson were decided, "the Court has made clear that expanding the Bivens remedy is now a 'disfavored' judicial activity." Ziglar v. Abbasi, 137 S. Ct. 1843, 1857 (2017) (citation omitted). In Ziglar, the Supreme Court held that, when considering a Bivens claim, a court must first analyze whether the case "presents a new Bivens context," which it does "[i]f the case is different in a meaningful way from previous Bivens cases decided by" the Supreme Court. Id. at 1859-60. Factors suggesting that a case may "differ in a meaningful way" include

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; [and] the risk of disruptive intrusion by the Judiciary into the functioning of other branches . . . .

Id. at 1860. If the case "presents a new Bivens context," a court must consider whether there are "special factors counselling hesitation," or factors that "cause a court to hesitate before answering that question in the affirmative," such as "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." Id. at 1857-58.

The plaintiffs in Ziglar were noncitizen detainees held on immigration violations in the wake of the September 11, 2001, terrorist attacks who alleged that they were verbally and physically abused, subjected to arbitrary strip searches, and subjected to prolonged detention. Id. at 1843. The Supreme Court held that those "claims bear little resemblance to the three Bivens claims the Court has approved in the past: a claim against FBI agents for handcuffing a man in

his own home without a warrant; a claim against a Congressman for firing his female secretary; and a claim against prison officials for failure to treat an inmate's asthma," and therefore the Ziglar plaintiffs' claims presented "a new Bivens context," necessitating a "special factors analysis." Id. at 1860 (citations omitted).

Plaintiff's Bivens claim against the Federal Individual Defendants, who allegedly were responsible for the "wrongful[] lodg[ing]" of the 9/27/13 Detainer, plainly "presents a new Bivens context," as the alleged facts and violations at issue "bear little resemblance to the three Bivens claims the [Supreme] Court has approved in the past." See id. at 1857-60. Plaintiff alleges that Defendant Outlaw "did not care . . . whether or not the wrong person was detained pursuant to the detainer that he lodged on" September 27, 2013, and that no United States Government employee made an inquiry to "ascertain whether in fact the [9/27/13] [D]etainer should have been issued with regard to Plaintiff, and/or . . . whether in fact Plaintiff was a United States [c]itizen." (See id. ¶¶ 16, 49-51.) These allegations "bear little resemblance" to FBI agents' "handcuffing a man in his own home without a warrant, a claim against a [Member of Congress] for firing his female secretary, and a claim against prison officials for failure to treat an inmate's asthma." See Ziglar, 137 S. Ct. at 1860.

Thus, the Court must next consider whether there are "special factors" that counsel hesitation. See id. at 1857-59. Having done so, the Court concludes that the Judiciary is not "well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed" here. See id. at 1858. That is because the Judiciary is not positioned to provide "guidance . . . as to how [a DHS] officer should" handle the issuance of an immigration detainer or ascertain whether an individual is in fact a United States citizen and, were the Court to attempt to do so, there is a not-insignificant "risk of

disruptive intrusion by the Judiciary into the functioning of other branches," specifically the Executive Branch and the Department of Homeland Security.  See id. at 1860.  In Ziglar, the Supreme Court observed that "[n]ational-security policy is the prerogative of the Congress and President" and that "[j]udicial inquiry into the national-security realm raises concerns for the separation of powers in trenching on matters committed to the other branches."  Id. at 1861 (internal quotation marks and citation omitted).  Were the Court "to consider and weigh the costs and benefits of allowing a damages action to proceed" here, it would "raise[] concerns for the separation of powers in trenching on matters committed to the" Executive Branch and the Department of Homeland Security.  See id. at 1858-59, 1861.  Thus, "special factors" counsel hesitation from allowing Plaintiff's Bivens claim to proceed.

For reasons similar to those articulated in Ziglar, the Court concludes that Plaintiff's constitutional claims against the Federal Individual Defendants cannot proceed under Bivens.  The Federal Defendants' motion to dismiss Count V is thus granted.

Count VI: Section 1983 Monell Claim Against the City of New York

Plaintiff asserts in Count VI that the City is liable for the deprivation of his Fourth and Fourteenth Amendment rights under 42 U.S.C. § 1983, as the City, "acting through its police [(sic)] department," "had de facto policies, practices, customs and usages . . . of failing to properly train, screen, supervise, or discipline corrections staff and other employees, and of failing to inform its employees' supervisors of their need to train, screen, supervise or discipline said employees," "which were a direct and proximate cause of" the unconstitutional conduct Plaintiff alleges.  (SAC ¶¶ 77-94.)  Plaintiff further alleges that the "DOC routinely has held people who were otherwise eligible for release, based only on immigration detainers," and the

City has "authorized, tolerated as institutionalized practices, and ratified the" alleged misconduct that led to the detention of Plaintiff, a United States citizen. (Id.) The City asserts that Plaintiff fails to state a municipal liability claim against the City because he "fails to plead an underlying constitutional violation," and that he fails to "allege plausible, specific allegations that a municipality was the moving force behind the alleged constitutional violation." (City Opening Br., at 6.)

Plaintiff may state a claim for violations against the City, a municipal defendant, if he alleges facts showing the existence of an official policy or custom causally related to the deprivation of his constitutional rights. See Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978); Walker v. City of New York, 974 F.2d 293, 301 (2d Cir. 1992). Evidence of a policy or custom may include a municipality's failure to provide adequate training or supervision of its agents, when that failure rises to the level of deliberate indifference. See Bd. of Cnty. Commr's of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 407 (1997) ("If a program does not prevent constitutional violations, municipal decisionmakers may eventually be put on notice that a new program is called for. Their continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action – the 'deliberate indifference' – necessary to trigger municipal liability." (citations omitted)). "Monell's policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions." Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007) (citations omitted).

"[A] municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the untrained employees

come into contact.'" Connick v. Thompson, 563 U.S. 51, 61 (2011) (quoting Canton v. Harris, 489 U.S. 378, 388 (1989)) (brackets omitted). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Connick, 563 U.S. at 62 (quoting Bryan Cty., 520 U.S. at 409). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." Id. The Second Circuit has recognized that a plaintiff need not prove and document a failure to train at the pleading stage to state a claim for municipal liability under Monell, given the difficulties inherent in obtaining relevant facts absent discovery. See Amnesty Am. v. Town of West Hartford, 361 F.3d 113, 130 n.10 (2d Cir. 2004) ("It is unlikely that a plaintiff would have information about the city's training programs or about the cause of the misconduct at the pleading stage, and therefore need only plead that the city's failure to train caused the constitutional violation."); see also Castilla v. City of New York, No. 09-CV-5546-SHS, 2012 WL 3871517, at *4 (S.D.N.Y. Sept. 6, 2012) ("The Second Circuit has not yet addressed whether Iqbal has heightened the pleading requirements for such a municipal liability claim, but district courts in this Circuit have continued, post-Iqbal, to apply the pleading standard articulated in Amnesty to a Monell claim based on a failure to train." (citations omitted)).

Plaintiff here fails to plead nonconclusory allegations to support the inference of the existence of an official policy or custom causally related to the deprivation of his constitutional rights, his allegedly unlawful detention and his alleged ineligibility for a plea bargain that would have resulted in community service but-for the 9/27/13 Detainer. Plaintiff makes generalized allegations, lacking specificity, about the City's propensity to detain "large numbers" of people based on immigration detainers, and conclusory allegations as to the

likelihood that he would have been kept in custody absent the ICE detainer.  (See SAC ¶¶ 17-19, 36-39.)  Plaintiff pleads that bail was imposed by the state court judge, at the request of both the prosecution and the defense, and Plaintiff admits that he did not make any efforts to pay bail in order to attempt to secure his release (see id. ¶¶ 17-22); there was thus an objective legal basis for holding him, as Plaintiff admits that he did not take any step to pay the bail.  Moreover, the withholding of the opportunity to plead guilty in exchange for a community service sentence is attributed in the SAC to the state court judge's reaction to the existence of the 9/27/13 Detainer—not to any action of any city employee, much less to any policy or practice of the city.  (See id. ¶¶ 18-21.)  Plaintiff thus does not plead any allegations to support an inference of a causal link between an official policy or custom of the City and an underlying constitutional violation of Plaintiff by a state actor acting on behalf of the City.

Nor has Plaintiff plausibly alleged nonconclusory facts to support the inference of a failure of the City to train.  Here, Plaintiff alleges in part that the City: (1) has an official policy of "treating immigration detainers as mandatory for wide categories of inmates, and of not engaging in any inquiry," despite receiving "explicit notice" that the subject individual was a United States citizen, into "whether the detainers are erroneous or improper;" (2) ratifies that misconduct "by failing to take adequate precautions in the supervision and/or training of [] DOC personnel;" (3) does not train DOC staff "to check the nativity of inmates as to whom purported immigration detainers are lodged, to see whether the inmate had been born in the United States and was thus a citizen, and therefore not subject to removal from the United States under the immigration laws," (4) never trains DOC staff "on the procedures, practices, policies, laws, rules, and/or directives governing the effect, if any, an immigration detainer has on an inmate and an inmate's detention generally and/or on said inmate's right to be released from detention,

confinement and incarceration;" and (5) "does not ensure that [] DOC staff, including but not limited to [] DOC corrections officers, are kept informed and/or instructed on the procedures, practices, policies, laws, rules, and/or directives governing immigration holds, and provides no training and/or instruction to its staff and/or corrections officers in those matters."  (SAC ¶¶ 81, 87-99.)  Plaintiff does not allege in a nonconclusory fashion that such alleged training failures are endemic nor that "[a] pattern of similar constitutional violations by untrained employees" exists, which is "ordinarily necessary" for a "failure to train" claim, as such a pattern would have put the City on "notice" that its training deficiencies were causing violations of constitutional rights.  See Connick, 563 U.S. at 62-63.  Though Plaintiff "need not prove and document a failure to train at the pleading stage to state a claim for municipal liability under Monell," there is no plausible factual pleading in the SAC with respect to the existence of an official policy or custom or failure to train that is "causally related to the deprivation of Plaintiff's constitutional rights."  See Amnesty, 361 F.3d at 130 n.10; Castilla, 2012 WL 3871517, at *4.

Plaintiff's allegations thus do not to suffice to state a claim for Monell liability. The City's motion to dismiss Count VI of the SAC is therefore granted.

Petitioner's Request for Leave to Amend the SAC

In his opposition brief to the Defendants' motions to dismiss the SAC, Plaintiff makes more than one request for leave to file a Third Amended Complaint to augment his pleading.  (See Opp. Br., at 4 n.6 and 11 n.17.)

"Although Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend shall be freely given when justice so requires, it is within the sound discretion of the district court to grant or deny leave to amend."  McCarthy v. Dun & Bradstreet Corp., 482 F.3d

184, 200 (2d Cir. 2007) (internal quotation marks and citations omitted). "A plaintiff need not be given leave to amend if he fails to specify how amendment would cure the pleading deficiencies in his complaint." <u>Clark v. Kitt</u>, No. 12-CV-8061 CS, 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014), <u>aff'd</u>, 619 F. App'x 34 (2d Cir. 2015) (quotation marks and citation omitted).

   The Court denies Plaintiff's request for leave to amend for several reasons. To begin with, Plaintiff has already amended his complaint twice, in response to two prior motions to dismiss filed by the Defendants. (<u>See generally</u> Civil Case No. 16-6139 Docket.) Additionally, the undersigned's Individual Rule of Practice 2(b)(iii) requires that "[w]ithin seven (7) days after a motion pursuant to Rule 12(b)(6) or 12(c) is filed, the non-moving party must, by letter, filed on the ECF System, notify the moving party of its intent to amend the complaint as of right, make any request for leave to amend in response to the motion or state that it will file its opposition to the motion without further amendment." Plaintiff did not file a letter on the ECF System making a request for leave to amend after the motions addressed in this Memorandum Opinion and Order were filed. (<u>See generally</u> Civil Case No. 16-6139 Docket.) Finally, the description Plaintiff proffers of his proposed further amendment, including the addition of due process and unlawful Takings Clause claims, Fourteenth Amendment claims against Outlaw and the City, and a claim under Article I, § 11 of the New York State Constitution against the United States, is conclusory in nature, and it appears that the amendments would ultimately be futile, for the reasons discussed above. Though Plaintiff seeks to add due process and unlawful Takings Clause claims for $6 deducted from Plaintiff's DOC account, it is clear from his assertions in a lengthy footnote in his brief that he received the benefit of release from custody due to an alleged payment of the bail from his DOC account, and that he received a $5 MetroCard upon his

discharge from custody.  (<u>See</u> Opp. Br., Docket Entry No. 51, at 4 n.6.)  Thus, Plaintiff cannot demonstrate the deprivation of rights required to sufficiently plead due process and unlawful Takings Clause claims, nor, even if the payment of the bail and the MetroCard were unlawful takings, that there is a lack of just compensation, because Plaintiff does not challenge the lawfulness of the bail imposed for his charged crime nor that he actually received the MetroCard.

As Plaintiff has already amended his complaint twice in response to Defendants' earlier motions, does not proffer a proposed third amended complaint, and does not indicate how he would address the deficiencies identified above in a further amended pleading, the Court finds that justice does not require the granting of leave to further amend the complaint.  <u>See</u> <u>Clark</u>, 2014 WL 4054284, at *15.  The request is denied.

C<span style="font-variant:small-caps">ONCLUSION</span>

For the foregoing reasons, the Federal Defendants' motion to dismiss Counts I through V of the Second Amended Complaint is granted, the City Defendant's motion to dismiss Count VI of the Second Amended Complaint is granted, and Plaintiff's request for leave to further amend his complaint is denied.

The Clerk of Court is directed to enter judgment accordingly and close this case.

This Memorandum Opinion and Order resolves Docket Entry Nos. 42 and 45.

SO ORDERED.

Dated: New York, New York
       March 13, 2018

                                                   /s/ Laura Taylor Swain
                                              LAURA TAYLOR SWAIN
                                              United States District Judge